I'd like to reserve two minutes for rebuttal if I might. May it please the court. I'm John. Mr. Curtin. Yes. I am John Curtin. I represent Yvon Wagner for the estate of Eric Vogel. This case involves a failure to accommodate an inmate's mental illness. Eric Vogel was in a florid, psychotic state. He objected to undressing and changing into a uniform which contained or was comprised in part of pink underwear, something which the record indicates was designed to offend and humiliate inmates. Rather than addressing his resistance to this as a mental health issue, the guards forced him to the floor, forcibly stripped him, dressed him in the pink underwear as he screamed that he was being raped. Isn't it about some evidentiary issues and whether stuff ought to come in or not? Yes. Okay. Let's get there. All right. Your Honor, the court in this case repeatedly abused its discretion. All right. And the first item of abuse of discretion that I'd like to talk about is the denial of rebuttal. Rebuttal has been and is in the local rules. You think that's your best argument on the denial of rebuttal? Well, Your Honor, I'm cognizant of the fact that if I don't talk about issues that go to liability, talking about issues that go to damages might not be worthwhile. So I'm starting with the issue of rebuttal. I guess I'm trying to find out when we get to rebuttal, if that's really your argument, we could maybe argue whether there's an absolute right to rebuttal either in Arizona local rule 39.1D or Spalloni, which is our case in 1989. But I guess my worry is where's the prejudice? I think it's inherently prejudicial, Judge. Well, inherently doesn't quite cut it. I mean, you've got to tell me, what's the prejudice? Okay. Let me put it this way, Your Honor. We were we structured the argument based on the rule and on the judge's assurance that we had rebuttal. Points were not made in the initial closing. The court waited until the initial closing by plaintiff had been completed. Then, at the most prejudicial moment prior to the defense closing, the defense was essentially given license. Did you put in this record what you would have said further? Your Honor, I'm familiar with the existence of an offer of proof. I'm not familiar with the existence of an offer of argument. Although we did. I mean, my worry is there's nothing in your briefs any place that even says what you would have said more. Well, what we would have. I mean, for the prejudice prong, it seems to me that's something you would have given me, so I'd know how to evaluate it. And I can give you that, Your Honor, because the as seems to be the case throughout here, the judge sort of set us up and then hit us with the combination punch. Let me ask you this. In the rebuttal. Let me interrupt. I intentionally interrupt, by the way. I apologize for doing that. All right. I know that, you know, I'm a district court judge, and, you know, my practice may not be uniform with my colleagues, but I know that I always tell jurors, you know, what's going to happen, and I lay out a little bit of a road map, and I talk about the fact that the party with the verdict gets the last word and they'll have an opportunity to give a rebuttal. Was any of that told to the jurors here, or did the judge also perhaps tell you how long your rebuttal would be? In other words, was there anything that preceded this, giving instructions to either you or the jury as to what they could expect? The answer to that question, Your Honor, is I believe yes and yes. The judge did, was presented. We talked with the judge beforehand, said hour for closing, 20 minutes for rebuttal. Actually said 20 minutes for rebuttal. Yeah. And the judge said that's fine. Did he tell that to the jury also? I believe he did, but I can't cite to that record. I wish you'd have put it in the record. I apologize for that. Your Honor asked me about the issue of prejudice. I want to return to that. You see, if he told that to the jury, I think I would place this possibly in a little different context. The jury is expecting something that did not happen. I can see that as inherently being prejudicial, perhaps. So I just was wondering whether that actually happened. I believe it did, Your Honor, from my recollection, but I can't cite you a point in the record. The issue of prejudice, Your Honor, I think is aptly demonstrated by the motion for mistrial, which occurred as a result of an improper argument. During the course of argument, defense counsel essentially raised a defense that isn't a defense and suggested this was all Yvonne Wagner's fault. We asked for the opportunity to respond to that. We didn't get a chance for rebuttal. Our only remedy at that point would be a motion for mistrial based on the improper argument, and the Court denied that. So here again, we get set up and we get the legs cut out from underneath us. You don't think that we can reverse strictly on that issue alone, do you? I mean, I'll tell you quite frankly, I'm sympathetic to your cause, and I guess as a district court judge I might be more inclined to be sympathetic. But can we reverse just on that issue alone? I believe you can. I believe that that was – it was done in the most prejudicial manner possible because the ruling comes after we've done our initial closing. If we had been told in advance there would be no rebuttal, obviously experience counsel are going to structure their argument differently. Secondly, the defense counsel is basically given free reign at that point because he's told before his closing they're never going to get a chance to respond to anything you say. So here we are with nothing left in our arsenal to respond to the defense but a motion for mistrial, and that gets denied. I think that is sufficiently prejudicial in and of itself, Your Honor, to justify reversing. I don't care what the rest of the record looks like. You did this overwhelming evidence that supports the jury verdict. We just disregard all of that? Well, I think there's – this raises the other evidentiary points that I wanted to make, Your Honor. Two related issues. Exclusion of defendant's – or defendant's expert, Phil Esplin. This was a psychologist that had been named as a witness, hired by the defense in the state court action. At his deposition, he gave testimony so favorable to the plaintiff that the court was under the apparent misapprehension into the second day of the trial that this was plaintiff's witness. In that context, the court restricted his testimony to the four corners of his report. Well, we didn't have anything to do with generating that report. Now, why is that significant? Well, just a minute before you get to why is that significant, you're really arguing in this particular instance an abuse of discretion, aren't you? Yes, I am. What do you got to suggest if you're going to get an abuse of discretion? Well – Haven't you got to suggest that either there was an erroneous legal standard applied or that he was clearly erroneous about the factual determinations? Well, I think that – and I think that does exist in the record. Well, I'm suggesting isn't that what you've got to prove? Absolutely, Your Honor. All right. So the erroneous legal standard, you're not there, are you? He applied 703, didn't he? He – what he applied with regard to Dr. Esplin, the defendant's expert. Yeah, I'm talking about Dr. Esplin. Okay. And what he applied was Rule 26, the Disclosure Rule. He restricted us to the report based on lack of expert disclosure, apparently under the misapprehension that this was our expert. Well, I guess my – That's an erroneous legal standard. I guess my worry is if I look at what he did in this particular instance, I'm trying to figure out with that particular expert what you're really talking about is the Well, no, we're talking about two things. We're talking about the significance of the pink underwear, but we're also talking about the impact on Eric Vogel of this event. Well, I understand you're talking about that, but how are you going to get it in? Dr. Esplin testified that for a person in a florid psychotic state such as Eric Vogel, that delusion that he was being gang raped was equivalent, traumatically, to a gang rape. Now, the reason why that's important is that it ties into the court's ruling that the testimony of Daniel Spitz was not admissible. But I guess what I'm trying to do is focus now on your – the expert on which you're talking right now. Yeah. This expert, the only thing that I saw that you did not get in with him that you wanted to get in was about pink underwear. No, Your Honor, we were also – Health. We were not allowed to get into the fact – the impact of the trauma. The impact of the trauma being equivalent to gang rape. Well, I guess I read your brief pretty carefully. I'll be glad to go there if that's where you want me to go. My worry is that in his – in the district court's determination in this particular instance, he made it on two or three different situations. But the first was he felt like that anything that he had that he was going to talk about was unsupported in the record. And he was especially talking about Wagner's stuff. And then he said they lacked foundation. And then he said it was confusing to the jury. And then he said it was more prejudicial than probative. Those were the four things. Well, if I look at 703, and I'm really looking now here because there's a lot of stuff he could have looked at which was hearsay, which may not have been admissible, but he gets to look at it anyway. Under 703, even though he could look at stuff that is inadmissible informing his testimony, he cannot talk about those facts and data. And I guess I'm trying to figure out how the poor old DJ was supposed to react when all that you wanted him to testify about was from facts or data that was inadmissible and then make him, allow him to testify. Thank you. And that's also. Maybe you ought to focus on why Wagner's statements were admissible. Certainly, Your Honor. I will agree that some of the testimony in the deposition may have been inartfully phrased in terms of testifying as to the beliefs of Eric Vogel. But those conversations were clearly founded on conversations with Eric Vogel. They go to his state of mind. And it's his state of mind that is at issue when Dr. Esplin is evaluating this. Dr. Esplin is testifying about the extent of the trauma. He's also testifying about the extent or the significance of the pink underwear. When Eric Vogel makes those statements to his sister, first off, he's indicating, contrary to the judge's apparent belief, that Eric Vogel was aware of the color of the underwear. Isn't that the only place? Isn't that the only place in this record where that comes out? Actually, I don't think so. Where is the other place? I looked all over. In his conversations with his attorney, there was a statement in her notes which referred to pink slippers and underwear, somewhat ambiguous. But the attorney didn't testify. What? The attorney didn't testify. Nor couldn't have testified. Actually, he did. This was his criminal defense attorney. I see. And she did appear as a witness. And there was no stop in there? She was not allowed to mention pink underwear. What offer of proof did you give the district court about what Ms. Wagner would say? We offered this testimony repeatedly during the course of the trial. But primarily, I think you would find it in the record in the motions in limine. Well, I looked in the motions in limine. I'm trying to figure out, what was your offer of proof? Because the reason I say about that, I'm asking you that to correct this, is because the language of 8033 is pretty specific. And I looked at your offer of proof to see if you were really talking about 8033. There's no question it isn't an excited utterance. It's too long after the fact, probably, to qualify as that. So the only place it's going to come in is 8033, correct? I believe that's correct. And if we look at 8033, then we look at language that says ---- Well, let me correct that, Your Honor. No, I don't agree with that. My point is that it's not hearsay. I'm not talking about an exception to the hearsay rule. I'm talking about it not being here. It's not being offered for the truth. It's being offered for the state of mind, not for the truth. Exactly. To show his awareness of the existence of the pink underwear and also to show the effect of the trumpet. But isn't that 8033, the state of mind? Isn't that exactly what that is? If it were in fact offered for the truth of the statement, then it would be 8033. I think you could get at it either way. My point is that it's not hearsay. I see that I'm running short on time here, Your Honor. I really did want to address the issue of excluding the testimony of Dr. Spitz, but I'm afraid I may have to wait for rebuttal on that. Okay. Let me say one very quick question. There was a video here that was played for the jury, correct? That's correct. And the pink underwear was shown on the video and they had all that information? The video was not clear. They showed him the uniform. It was not clear that they showed him the pink underwear in advance. The jury knew nothing about pink underwear at all? It was strenuously avoided in the testimony throughout, despite the fact that we had essentially an admission from Sheriff Arpaio that the pink underwear is essentially for the purpose of irritating. Part of the totality of the circumstances there that could enter into the defendant's mindset. Absolutely. He tended to perceive this, according to what we believe he told his sister, as being set up for the rape, being essentially feminized. And that was also the conclusion of Dr. Hussman. I'm also going to let you talk about Dr., the other expert, because we might need the State to be able to respond. So go ahead. Give your argument about Dr. Spitz. Gladly, Your Honor. We'll get it out here now so that they can respond. Well, and thus illustrating the key importance of rebuttal. When you let one side talk and don't let the other side respond to it, you have a problem in fairness. Now, with regard to Dr. Spitz, one of the key questions here, I guess, is this. Dr. Spitz is a pathologist. He was the only pathologist who was offered to testify in this case. He drew the conclusion that in a patient such as Eric Vogel, who was schizophrenic and who therefore had a predisposition to cardiac death related to stress and had this significant stressor and had information linking it to the event at the jail, that that, in fact, was the cause of his cardiac death 19 days later. All right. Let me talk to you directly about him. What is the erroneous rule or legal standard that was applied? The judge excluded Dr. Spitz. No, what's the rule? Not what did he exclude. What's the rule? What's the legal standard? Because I'm not the district court judge. If I were sitting there, I might do something different. We're all up here. We're right there. I'm on appeal now. I don't get to make those decisions as if I'd make them, even though all of us may want to make them. And we may get all excited about making them. What are we doing on appeal? We've got to have either an erroneous legal standard or we've got to have a clearly erroneous fact. Well, I think that there is a clearly erroneous application of the legal standard. Why? Because Dr. Spitz had the correct qualifications, was the only witness with those qualifications. Hold on just a minute. Let's talk about that. It's my understanding that he had reviewed only the autopsy report and some related documents. That's correct. That he hadn't interviewed any witnesses. That's correct. He hadn't consulted any relevant treaties or literature. He stated that he was familiar with the literature applicable to the topic. He hadn't reviewed anything specific in regard to the case. He had not. He'd only investigated four or five people with the same problem. Not quite. Where the cause of death was acute arrhythmia. Okay. And then he didn't even know Vogel was involved in a car accident shortly before his death. I think that last point is wrong. Well, there's nothing in his transcript that says he knew anything about the car accident. Because I believe the proffered testimony was that the prospect of his being faced with going back to jail was the cause of the spike in stress which led to the cardiac arrhythmia. And that his whole theory was this was common sense. Well, common sense. His idea was I haven't looked at any treatises. I haven't looked at any literature. I haven't interviewed any witnesses. I looked at an autopsy report. I don't even know there was an accident. But common sense says. Judge, if you want to hear my arguments, you've got to let me talk sooner or later. No, but I'm just trying to lay it all out so you can give me the whole response. He didn't say I didn't know there was an accident. Well, frankly, there's nothing in there suggesting he knows. No, but that's a different fact. Okay, go ahead. He didn't say I didn't know there was an accident. You don't need to argue with me. You can address the rest of it. We ought to be clear as to what the fact is. To Judge Noonan. Thank you, Your Honor. The point, Your Honor, I guess is this. This is common sense of a man with substantial experience and training as a pathologist. He has, in fact, conducted many autopsies of schizophrenics. Some of those, a limited number, have to do with this sudden cardiac arrhythmia. Now, oftentimes if you do an autopsy of a schizophrenic, you're going to find another cause of death. When you find a man who has a cardiac death and nothing wrong with his heart, this leads you to the conclusion. The science of this is uncontroversial. I took the deposition of Dr. Ira Ehrlich on this point, which is also in the record. Dr. Ira Ehrlich, not a pathologist but a cardiologist, acknowledged that this is a known mechanism of death. I think everybody agreed that, you know, having this type of mental problem with schizophrenia makes you more vulnerable to cardiac arrhythmia, right? Yes. That's not even in controversy, is it? No, it's not. And what this gentleman did, and it's the job of a pathologist to identify cause of death, is he looked at what we call the clinical circumstances. He looked at the medical facts based on his training and experience, and he drew a conclusion. That conclusion should have been tested by cross-examination. It shouldn't have been excluded. Since you're getting more than your money's worth here, let me just follow up one thing. You know, it seems to me that maybe if this happened a day later, you know, we'd be maybe a little less or more concerned. But this was 19 days later. I mean, was this really, as a matter of law, foreseeable, regardless of what the doctors might have testified to, and was causation something which was not too much of a stretch here? I mean, it comes with that type of odor because of the passage of time. And I just wonder whether there's a view of this case where we ought to reflect upon whether, as a matter of law, regardless of what your arguments are, there can't be foreseeability of causation because of the 19-day interregnum. Well, and to respond to that, two different points there, Your Honor. Foreseeability with regard to damages, he's essentially an eggshell decedent. You needn't foresee that he would die as a result of this, merely that he would be harmed. On the issue of causation, here we have a well-trained expert, the only pathologist in the case. They didn't present another pathologist to say, no, the cause of death was something different. The best testimony they could come to oppose this was, we don't know. We wouldn't say it was this. We wouldn't say it wasn't. That was their opposing evidence. Under those circumstances, with a qualified medical expert willing to draw the inferences to a reasonable degree of medical probability, this is the cause of death. The best argument is that, as a matter of law, the jury should have been allowed to hear Spitzer's testimony and make that determination after that, right? And that's where I am leading to. It should have been tested by cross-examination. If there's a flaw in it, let them expose it. But they didn't even have testimony to refute it. And therefore, that was highly prejudicial. Did I give you a chance to respond? You certainly did. You've been more than fair, Your Honor. All right. Good morning, Your Honor. Eileen Gilbride for the defense. Don't you think the underlying facts should have been brought out? I mean, what was wrong with having the judge let pink underwear intrude itself into the case? It was part of the dynamics. It was part of what was happening at the time. It was part of the gestalt, so to speak, in addition to whether he thought he was being raped. Why was this total bar about pink underwear? Why? It wasn't part of the facts in that there was no evidence. As you stated before in the other argument, there was no evidence, no admissible evidence, that the pink meant anything to him. Well, let's talk about that, because we have the transcript here about what the deposition is of Wagner. And she does seem to say some things about that. She concludes, I remember him saying that they were going to have a party, and they were putting pink underwear on him to have that party. And they were, you know, talking to him that way. We are going to have a party with you, Eric. That's the term that I recall the conversations we had. It just seems that, you know, pink underwear, to me, is connected to the concept of feeling that you're going to be raped and having the party. It's all part of the dynamics of what was happening. Why should that not have been before the jury? Well, in what context, Your Honor? In the context of, well, hold on. On Wagner's. I'm allowing Wagner to testify to begin with, allowing this to be considered not on the issue of hearsay as such, but state of mind. It's not being offered for the truth, but it's being offered to what arguably was in this person's mind. She doesn't know what's in his mind. All she can testify. Testify as to what, you know, this conversation was all about, wasn't she? She did was able to testify that he sounded scared. He sounded afraid. He sounded this. He sounded that. But she couldn't testify to what was in his mind. She didn't have the foundation to do that. No one had the foundation to do that except Eric Vogel himself. And I think the reason, Judge Carroll. She's testifying to what Eric Vogel told her was in his mind. No. He didn't testify to what was in his mind. He was testifying to what he thought was occurring. He was testifying to facts that weren't actually facts. I think you're wrong, Ms. Gilroy. He's testifying, she is testifying to what he told her. That's not hearsay. It's not being offered for the truth of the fact. And I read through your brief, and I would say there must be 20 times where you try to characterize these statements as hearsay. Hearsay is statement where a fact is asserted that was not in the knowledge of the witness. These witnesses heard these words. They can say that. But she couldn't extrapolate from that. No, she didn't extrapolate. She said this is what he said. The jury can then decide what was in his mind. Well, she don't. How did you get to the hearsay exception? I mean, how did you persuade the district judge that this was hearsay? It's remarkable. Thank you, Your Honor. Try to persuade us. Well, if I had been the trial lawyer, I would appreciate the compliment. Well, are you going to answer? I'm sorry? Are you going to respond? Yes, sir. What's the hearsay? He was speaking about she was trying to testify what he told her. And where is that hearsay? And what he told her. What he told her, she perceived that, didn't she? She heard it. She heard it. She heard it. She's testifying to what she heard. Yes. So where is that hearsay? But then she was trying to extrapolate. How is that hearsay? Because the truth of the matter of what she heard is what she based her extrapolation on. Oh, no, no. She's not saying that he was raped. She's saying he told me he was raped. That's for you. You've totally confused it. Well, I don't think this even so, Your Honor. What do you mean even so? That's your main argument, that this was all excluded as hearsay, that Dr. Spitz couldn't testify. Dr. Spitz couldn't testify because it was hearsay. Ms. Wagner couldn't testify because it was hearsay. That's what you've based your case on, and you've got to let the district judge down the garden path. Your Honor, Dr. Spitz couldn't testify because he couldn't meet the Daubert test, not because he could not meet the Daubert test. He had no methodology in the record for testifying. He was a medical examiner. He had been an experienced examiner. When he'd been in the business for 10 years, he was on the faculty of Wayne State University. He looks like an expert to me. He might look like one, but he didn't testify like one, because he tested. There was no evidence. He never got a chance to testify. Well, because there was no evidence in the record that he had any methodology for coming up with his causation opinion. What methodology do you need here? More than you need. What's so unique about Daubert in the context of this particular circumstance? You need more than common sense to say that a death 19 days after a dress-out procedure caused by the dress-out procedure, when the man had left his home for the first time in years. Sounds like a jury issue. I don't see where that's a Daubert issue. The trial judge must be the gatekeeper under Rule 703. And there's no – there has to be an abuse of discretion here. And I don't see respectfully how there's an abuse of discretion when the evidence suggests there is a devoid of any methodology that Dr. Spitz used for causation. Well, the judge didn't want anything about pink underwear in the case. He didn't want Dr. Spitz to testify. He didn't want the other doctor to testify. And he wouldn't even let rebuttal. I mean, don't you think there was a bit too much here that was happening, a little bit too heavy-handed? No, I don't, because the plaintiff has the burden of showing there is an abuse  And on each issue – Had there not been an abuse of discretion? If we look at all of these things, all of them, put them in a pot, do you think that it may rise to possibly a judge saying this was an abuse of discretion the way the case was handled? Another way of looking at it, did the plaintiff get a fair shake here? The plaintiff got a very fair shake. If you read the entire testimony, all 6, 8, 7, 8 days of testimony, you will see that the plaintiff got a very fair shake. The issue here was not whether a death 19 days later was caused by the dress-out. The issue was, was there a Fourth Amendment violation in dressing him out? And was – Would your answer be different if the death occurred a day later? He got out of the – he was driving, he had an accident, you know, and all this happened. But it wasn't 19 days. It was a day later. Would you still make the same argument? If there was expert testimony that qualified under Daubert and under 703 that the dress-out caused the death, then perhaps. But there was no expert – So you're telling me the difference is 19 days compared to 1 day. Is that basically – That's one of the factors. And the fact – Is there causation for the jury to decide? Only if there's – only if there's viable evidence to go to the jury. And here there wasn't. All that Dr. Spitz relied on for causation was the hearsay that there was maybe something with pink underwear and the fact that it makes common sense. That's all he relied on. And, in fact, he testified why Mr. Vogel died when he did is something probably nobody knows. Now, that's not a viable testimony for causation. Well, I'm looking at Spitz's letter here. I don't think it just relies upon this common sense concept that you're talking  That's exactly what he did. Well, it says, Mr. Vogel's death occurred 19 days after being released from the ward of the jail. During this time, Vogel continued to display signs of mental illness. That's not a question of common sense here. It's a continuity that he still had mental illness. His condition appeared relatively stable and back at his previous baseline. However, it is likely that after becoming aware that he was being sought by police and that he, again, would be subjected to the toxic environment that he had previous experience, his mental illness relapsed. And he goes on to talk about fear, panic, agitation. Why should he not have been allowed to tell that to the jury? Because he does not know what's in Eric Vogel's mind. And he said why he died, nobody knows. But then we have the testimony of Wagner, so the jury could consider that all of these circumstances were present at the time, including pink underwear, including whatever they were doing to him and dressing him out. Why can't the jury consider that? They're the fact-finders. Because the district judge has the ability and the obligation to be the gatekeeper under Rule 703, and the plaintiff has not shown why that's an abuse of discretion when he improperly closed the gate here, shut tight. No, I don't, Your Honor. I truly don't. Because he has the obligation to be the gatekeeper, and he has to the plaintiff has to show that there was an abuse of discretion in this regard, that he did something wrong on the law, or there was something clearly erroneous on the facts, and they haven't shown that. What about the fact that the plaintiff wasn't even allowed to give his rebuttal to the defendant's case? That's not a That's a tough case to begin with, all right? And, you know, it may well be that if I were a jury, I would say no to the case. That's not my role here. But in fairness, on top of everything else we have spoken about this morning, don't you think that the judge should have let him have his 20-minute rebuttal? What was going on there? Let me do comment on that. First of all, there is nothing in the record, in responding to your question from before, that the jury was told that the plaintiff would have rebuttal. It's not I'm curious about that. I did not remember that in the record. I don't think it's in there. If you look at the excerpt of record at page 125, 126, it was The jury could have been prejudiced possibly that way, but certainly the plaintiff's lawyer was told. The plaintiff's lawyer was told. In fact, it's on page 125, 126 of the excerpt. The proof is a tough case. It just seems that its legs were cut out from underneath it. It's a matter of basic fairness. The plaintiff needs to prove an abuse of discretion. He needs to show that it prejudices his case, that the jury would have come out differently. The last word in, my God, what could be more than abuse of discretion, not to allow the person with the burden of proof to have the last word? But he didn't say in his brief or anywhere, not to the trial judge and not here, what they would have said had they been. What does that make in the real world? I mean, the plaintiff wants to get the last word in. What more do you need than that? Because he has the burden of showing a harmful error. Well. Maybe if there was an error, he has to show it harmed him, that the jury would have come out differently if he was able to say X in rebuttal when he wasn't allowed to say X and they never came forward with anything. I mean, he's ready. He's geared up to make his last pitch to the jury. He's got the burden of proof there. He wants to be able to advocate. He's being denied the opportunity to advocate. No, he wasn't. He had a full hour of closing argument in his initial, and the defense had their closing argument, and he never came back and said, if I had a chance for rebuttal, this is what I would have said and this is what would have made a difference. He has an obligation to make a record? I mean, this is not like, you know, preserving an objection necessarily. I think he had an obligation to give an offer of proof on what he would have said and how it prejudiced him, and it's just not in the record. I'm not reading the law that supports that particular notion, but, you know, and I haven't seen anything in your brief that says that there's some obligation at that particular time to raise a specific objection. The law is that it's the judge's discretion in how the trial will go. Our Arizona district court rule 39.1 doesn't guarantee him rebuttal. It says this is how the trial will go. But he's in a fair trial, doesn't it? And he got a fair trial. If you read all of the eight days of trial transcripts, he got a fair trial. He hasn't come forward with one thing that he would have said or could have said. The jury was not allowed to hear anything about pink underwear, right? The jury didn't need to hear anything about pink underwear because there was no evidence. That was part of the dynamics of the facts of this case. It may have been, but it wasn't. I mean, if there was evidence that it was strict, hard, admissible evidence, then fine. I think Judge Carroll knew that Plaintiff's counsel wanted to strike an arrow through the heart of Sheriff Joe Arpaio and his policies. Sotomayor, let the jury know that this nonsense is going on down there. Believe me. In this case, maybe the judge is being too protective of the good sheriff, right? Jurors in Arizona, we all know Sheriff Arpaio, and we know what he does, and we know we don't have to be told by Plaintiff's counsel about things he says on the news. And that's exactly what Plaintiff's counsel wanted to get into. But what does it make if it's relevant evidence? It's not relevant. What's relevant is how he was dressed out and why. So if it's not relevant, you know, maybe one of us might disagree with that, but we'll see. All right. Do you need me to go on? Can I ask you a couple of more questions about the pink underwear? Please. At one point, the district judge says, well, there's no proof that Vogel knew it was pink. Now, is that an ordinary kind of ruling, that a judge decides that somebody is colorblind without any evidence in the record that he is colorblind? No, I don't think so. Aren't we assumed to have normal faculties? No, I don't think it had to do anything with colorblindness. What's that? It had to do with the fact that there was no evidence that the pink underwear was significant in his mind. That's not what he's asking. He's saying, was there any, the judge said that, you know, there's no proof that he knew it was pink underwear. Right. That's an incredible statement to make. The judge doubts that he knew it. Isn't that a strange? I think what Judge Carroll was saying was that he cared. What? Not that he knew, but that he cared. He knew and cared. How would the judge know that? Well, there was no evidence of it. If there was evidence that he knew and cared, it would have been admissible. But there was no admissible evidence that he knew and cared and that it mattered. That's your case. You had to have evidence that he knew and cared. The jury was not allowed to hear all of the underlying facts, right? No. Only a certain number of facts. The jury saw exactly what occurred during the dress-out. And the question was, did that violate his Fourth Amendment rights? How about the video? Was it clear that the pink underwear was shown on the video? I watched the video, which is in black and white. And no, the... It's in black and white. It's in black and white. And in fact, I attached it to my supplemental excerpt of record. The jailer or the detention officer holds it there while the other detention officer is trying to convince him to dress out. But the jury never saw anything about pink underwear on the video. That's right. It's in black and white. I want to return to the pink underwear. Judge – the district judge also ruled there was no evidence that pink underwear had any particular significance. Exactly. Do you think that's a reasonable ruling on fact? Absolutely. Now, I've tried to think of some hypotheticals to test you on that. If you were told that some person had gone to a party in a pretty pink outfit, would you think that person was a man or a woman? I don't know. You would be puzzled, is that right? I'm not sure why it would be relevant to my case. No, no. I'm wondering if you were just told casually, this person showed up in a pretty pink outfit, what would you think? I think the term pretty would mean more to me than the term pink. Well, I'm sure you would. Honestly? That might depend on whether or not this person lived where I live, in the West Village of Manhattan. I was going to say, it would make a lot more difference, I was just whispering to my colleague, make a lot more difference if it was here or it was in Idaho. No, no. Or in Phoenix, Your Honor. I mean, I'm just trying to be fair about this. Maybe. We're down in Phoenix. Okay. Exactly. Your Honor, I'm out of time. I would just ask you to affirm. If you have any more questions, I'd be happy to answer them. But Plaintiff has not shown an abuse of discretion here, as he is required to do. Thank you. Thank you very much. He's used all his time, I give him extra. You wouldn't want to deny me a rebuttal. How so that you don't take me up to the Supreme Court and suggest that I'm unfair, as you did the district judge. I'll give you a minute. Thank you, Your Honor. There's a line from the Rubiod of Omar Kayen that complains, wilt thou enmesh me with her destination round and then impute my fault to sin? That's kind of what happened here. The judge says things like, there is no evidence that this man knew it was pink underwear, after having excluded the evidence that showed that he knew it was pink underwear, the testimony of Yvonne Wagner. The judge didn't allow us to get in the testimony of the pathologist. Or the testimony of Dr. Esplin that would have explained the pathologist's testimony. See, if you have a psychologist, I mean, what's the relevance of the pink underwear? What's the relevance of this event? Why does it cause a trauma 19 days later? You're right, that's a hard question. That's a hard issue to prove. But if you've got testimony that says the significance of the pink underwear is that you're feminizing him, you're setting him up for rape. And the defendant's hired expert agrees with that. How is that not relevant? If you've got testimony that says the experience of this event for Eric Vogel was a gang rape, equivalent to a gang rape in terms of trauma. Then it makes sense for the pathologist to say, schizophrenics are vulnerable to this type of stress. They can have a cardiac arrhythmia. Why is this event so stressful? He thinks he's going back to the place where the gang raped him. That's his reality. That's why it's prejudicial. I'm going to concede a point here, by the way, in fairness. While we were sitting there, we looked at it. It does not appear that Judge Carroll told the jury there would be rebuttal. But he did tell us. And he taused us to prepare with that in mind and structure arguments with that in mind. Local rule says that- You're proving that the judge was right. If he'd given you a rebuttal, you'd have to take it more than your 20 minutes, because you'd take it double what I wanted to give you. Is my minute up? Yeah. I'll sit down. Thank you, Your Honor.
judges: Block, Noonan, Smith N. R.